UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARREN HUNTER,

    Plaintiff,

v.                                          Case No:   6:25-cv-360-GAP-NWH

NETFLIX, INC., ADAM MCKAY,
DAVID SIROTA and HYPEROBJECT
PRODUCTIONS, INC.,

    Defendants

---

**ORDER**

This cause came before the Court for consideration without oral argument on Defendants' Motions to Dismiss. *See* Doc. 12; Doc. 36. The Court has also considered the Plaintiff's Responses in Opposition. *See* Doc. 28; Doc. 49. For the reasons set forth below, the Motions will be granted.[1]

**I.    Background**

On December 5, 2024, Plaintiff Darren Hunter ("Plaintiff" or "Hunter") filed suit against Defendants Netflix ("Netflix"), Adam McKay ("McKay"), Scott Stuber

---

[1] The Court acknowledges that Plaintiff requested oral argument on these Motions. *See* Doc. 28; Doc. 49. After reviewing the parties' filings, however, the Court determined that oral argument was unnecessary.

("Stuber"), David Sirota ("Sirota"), and Hyperobject Productions ("Hyperobject") (collectively, the "Defendants"), alleging claims for copyright infringement and unjust enrichment, along with violations of the Lanham Act and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See generally* Doc. 1-2. Plaintiff originally filed suit in the Ninth Judicial Circuit Court in and for Orange County, Florida. Doc. 1. On March 3, 2025, Defendants removed the state action to this Court based on diversity jurisdiction.[2] *Id*.

In its Complaint, Plaintiff alleges that Defendants, "jointly and severally," unlawfully copied and exploited original elements from Hunter's books, THE MILLION DAY FORECAST ("Million Day Forecast") and THE MILLION DAY FORECAST AND THE DARK EXOPLANET ("Exoplanet," together with Million Day Forecast, the "Novels"), in their film, DON'T LOOK UP ("Don't Look Up" or the "Movie," collectively with the Novels, the "Works"). *See* Doc. 1-2 at 1; *see also* Doc. 13; Doc 13-1; Doc. 13-2; Doc. 13-3 (appending copies of the Works). Plaintiff describes the Novels as centering on "a protagonist who discovers an imminent cosmic threat and faces the challenge of convincing a skeptical and indifferent society to" act. *See* Doc. 1-2, ¶ 11. Plaintiff describes the Movie as a "comparison between public apathy

---

[2] Defendants also alternatively asserted removal based on federal question jurisdiction. *See* Doc. 1 at 6-8. Plaintiff did not contest removal.

towards climate change and the hypothetical scenario of ignoring a comet heading towards Earth." *See id.*, ¶ 28. Plaintiff claims that he is the sole author and copyright owner of the Novels, having registered the Novels with the United States Copyright Office ("U.S. Copyright Office") under the registration number TXu002396788. *See id.*, ¶¶ 12, 22.

According to Plaintiff, Defendants learned of the Novels' plot in 2015 and 2017, when he distributed copies of the Novels within the entertainment industry, including to representatives connected to Defendants. *See id.*, ¶ 25. Plaintiff further asserts that when Defendant Netflix released the Movie in December 2021, Defendants did not inform the public that the Movie had taken "key literary elements" from the Novels "without Plaintiff's consent and authorization," instead crediting Defendants McKay and Sirota as writers and producers of the Movie. *See id.*, ¶¶ 28-30, 38-39.

By Plaintiff's account, the similarities between the Works are "clear and substantial." *See id.*, ¶¶ 30-39. Plaintiff highlights the fact that the Works (i) "feature young female protagonists . . . who struggle to convince others of an imminent existential threat that will strike the Earth;" (ii) "feature female Presidents who deliver speeches to rally public support in the face of global danger;" (iii) "witness technologists abandoning original plans in favor of financially motivated alternatives involving advanced technology;" and (iv) center around "themes of

apocalyptic political satire, dark comedy, and the challenges of mobilizing collective action in the face of imminent danger." Doc. 1-2, ¶¶ 33-37. Plaintiff further alleges that Defendants' false statements regarding the originality of the Movie are misleading Florida consumers. *Id.*, ¶ 40.

On March 10, 2025, Defendant Netflix filed its Motion to Dismiss, and on May 12, 2025, Defendants McKay, Sirota, and Hyperobject ("Creator Defendants") filed their Motion to Dismiss.[3] Doc. 12; Doc. 36. In their Motions to Dismiss, Defendants primarily argue for the dismissal of all claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. Creator Defendants also argue, in the alternative, that the Court should dismiss this action pursuant to Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. *See id*. On April 14, 2025 and June 5, 2025, Plaintiff filed respective Responses to Defendants' Motions to Dismiss, asserting that Plaintiff had adequately pled its claims in the Complaint and that, in the case of Creator Defendants, this Court has jurisdiction over them. *See* Doc. 28; Doc. 49.

## II. Plaintiff's Failure to State a Claim

### A. Legal Standard

---

[3] On May 9, 2025, Plaintiff filed a notice of voluntary dismissal without prejudice, dismissing Defendant Stuber from the case, which the Court granted on May 12, 2025. *See* Doc. 34; Doc. 35.

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Rule 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the

speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### B.   Analysis

#### 1.   Copyright Infringement

Defendants argue that Plaintiff has failed to state a cause of action for a copyright infringement claim. *See* Doc. 12 at 11-19; Doc. 36 at 5-12. To establish a prima facie claim of copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (citations omitted).

##### (a)   Ownership of the Novels

Defendants argue that because Plaintiff failed to register Exoplanet, the sequel to the Million Day Forecast, Plaintiff "may not sue on any alleged similarities between that novel and the Film." *See* Doc. 12, at 11-12; Doc. 36, at 5-6. In response, Plaintiff asserts that the copyright registration "covers both the original book as well as its sequel" and submits an email as evidence of its registration. *See* Doc. 28 at 16; Doc. 49 at 11. Plaintiff's email purports to provide the number for the Novels' copyright registration and attaches a copy of the work that was allegedly deposited with the U.S. Copyright Office, which includes the text of the Million Day Forecast and Exoplanet. *See* Doc. 28 at 25; Doc. 49 at 22; *see also* Doc. 1-2, ¶ 22.

To show ownership of a valid copyright, a "plaintiff must prove that the work [] is original and that the plaintiff complied with the applicable statutory formalities." *Bateman*, 79 F.3d at 1541. "In any judicial proceeding, [a] certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once [a] plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman*, 79 F.3d at 1541.

Here, Plaintiff did not submit a certificate of registration for the Novels. Instead, Plaintiff provided a copyright registration number for a certificate, verifiable through the U.S. Copyright Office's Public Records System. UNITED STATES COPYRIGHT OFFICE PUBLIC RECORDS SYSTEM, https://publicrecords.copyright.gov/ (inputting Plaintiff's registration number in the search field) (last visited August 18, 2025). According to the certificate available on the U.S. Copyright Office's Public Records System,[4] Plaintiff registered a copyright for the work, "The Million Day Forecast." The certificate notes that the work was completed in 2015 and registration made in 2023.

---

[4] *See* UNITED STATES COPYRIGHT OFFICE PUBLIC RECORDS SYSTEM, https://api.publicrecords.copyright.gov/search_service_external/copyrights/pdf?copyright_number=TXu002396788 (last visited August 18, 2025).

```
                                                    Registration Number
                                                    TXu 2-396-788
                                                    Effective Date of Registration:
                                                    September 29, 2023
                                                    Registration Decision Date:
                                                    November 06, 2023
```

**Copyright Registration for One Work by One Author**
Registration issued pursuant to 37 CFR §202.3

**Title**

    Title of Work: The Million Day Forecast

**Completion/Publication**

    Year of Completion: 2015

**Author**

    • Author: Darren Hunter
    Author Created: Novel
    Citizen of: United States
    Domiciled in: United States

**Copyright Claimant**

    Copyright Claimant: Darren Hunter
    305 Deano Way, Harleysville, PA, 19438, United States

From the certificate of registration, it does not appear that Plaintiff registered a copyright for Exoplanet. The certificate does not reference Exoplanet's title nor year of completion.[5] Plaintiff's email (Doc. 28 at 25; Doc. 49 at 22) purports to show that this registration covers both the original book and sequel. It does not, on its own, provide prima facie evidence that Plaintiff complied with the applicable statutory formalities for Exoplanet. *See* 17 U.S.C. § 410(c). Plaintiff has therefore not

---

[5] Plaintiff's own exhibit indicates that the copyright date for Exoplanet is 2017; yet the certificate available on the U.S. Copyright Office's Public Records System indicates 2015 as the year of the work's completion. *See* Doc. 28 at 87; Doc. 49 at 84 (showing that the copyright notice for Exoplanet is dated 2017).

established ownership of a valid copyright as it relates to Exoplanet. *See Bateman*, 79 F.3d at 1541. Accordingly, the Court need not consider the alleged similarities between Exoplanet and the Movie.

### (b)     Copying of the Million Day Forecast

Because Plaintiff has not established a valid copyright in Exoplanet, the Court will focus its analysis on the Million Day Forecast and the Movie (collectively, the "Works at Issue").

"To prove actionable copying, a plaintiff must first establish, as a factual matter, that the alleged infringer 'actually used the copyrighted material to create his own work.'" *Bateman*, 79 F.3d at 1541. A "plaintiff can prove copying either directly or indirectly, by establishing that the defendant had access, and produced something 'substantially similar,' to the copyrighted work." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214, (11th Cir. 2000) (citations omitted). Substantial similarity "exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id*.

Moreover, "no matter how the copying is proved, [a] plaintiff must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work *with regard to its protected elements.*" *Id.* (emphasis in original). Expression is protected; broad ideas and *scènes à faire*—"stock scenes that naturally flow from a common theme"—are not. *Beal v. Paramount Corp.*, 20 F.3d 454, 458-59

(11th Cir. 1994). Thus, in "comparing two works to determine if they display the required substantial similarity, a court 'must eliminate from comparison the unprotectable elements of' the copyrighted work" and ask whether the protected elements, standing alone, are substantially similar. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020) (citations omitted) ("[S]ubstantial similarity between a copyrighted work's unprotectable elements and a purportedly infringing work isn't actionable, regardless of how many unprotected elements are copied or how important they may be.").

First, Plaintiff argues that the issue of substantial similarity between the Million Day Forecast and the Movie is one for the jury to decide. *See* Doc. 28 at 1-2, Doc. 49 at 1-2. However, the ability to separate protectable expression from unprotectable expression is a question of law. *See Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008) ("[T]he ability to separate protectable expression from non-protectable expression is in reality a question of law, or at the very least, a mixed question of fact and law.").

Second, Plaintiff contends that the Million Day Forecast and the Movie contain similarities that are "clear and substantial," and therefore, provide evidence of Defendants' actionable copying. *See* Doc. 1-2, ¶¶ 30-37; *see also* Doc. 28 at 2-16; Doc. 49 at 2, 4-10. To support its allegations, Plaintiff provides a chart in the Complaint, also replicated in its Response, that lists the similarities between the

characters, plot, sequence, and themes of the Works at Issue. *See* Doc. 1-2. at 8-12; Doc. 28 at 4-8. However, as Defendants rightly point out, such lists are "inherently subjective and unreliable, particularly where the lists contain random similarities, and many such similarities could be found in very dissimilar works." *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010); *see also Leigh*, 212 F.3d at 1215; *Beal*, 20 F.3d at 460. That is because "[a]t the most narrow, focused level, two works will almost always be distinguishable, and at the broadest level of abstraction they will almost always appear identical." *Baby Buddies*, 611 F.3d at 1316.

Thus, to determine whether there is actionable copying, the Court reviews the Works at Issue to separate out the works' unprotected elements from protected ones to determine whether the works' protected elements could be substantially similar. *See Compulife Software*, 959 F.3d at 1303. As part of this analysis, the Court read the Million Day Forecast and viewed the Movie.

Upon the Court's review, it is clear that the Million Day Forecast is an entirely different work from the Movie. The similarities listed in Plaintiff's chart stem from broad uncopyrightable ideas that are typical of works that center around the Earth's destruction: the protagonist is the first to learn and warn the public about a celestial threat, the public is in disbelief upon learning about the threat, and the populace attempts to find a solution for such a threat. Moreover, the similarities between these works are at the broadest levels, *i.e.*, the similarities between the protagonists

are limited to their female gender and the similarities between the settings to scenes taking place in the United States. *See Baby Buddies*, 611 F.3d at 1316. The expression of these broad ideas bears no similarities. *See Beal*, 20 F.3d at 459-60.

Because, as a matter of law, no lay person could recognize that the Movie has been appropriated from the Million Day Forecast, *see Leigh*, 212 F.3d at 1214, Plaintiff's allegations are insufficient to plead a plausible claim for copyright infringement and therefore will be dismissed with prejudice. *See Twombly*, 550 U.S. at 554-55; *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage. In other words, the question is whether 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'") (citations omitted); *see also Kmet v. Discovery Communications, LLC*, No. 4:16cv565-MW/CAS, 2017 WL 11672822, at *1-*4 (N.D. Fla. Nov. 30, 2017) (dismissing plaintiffs' copyright infringement claim with prejudice because, as a matter of law, the works at issue were not substantially similar).

### (c) Secondary liability claims

Because Plaintiff's allegations are insufficient to plead a claim for copyright infringement, Plaintiff's claims for contributory copyright infringement and vicarious copyright infringement must also be dismissed. *See DuBay v. King*, 844 F.

App'x 257, 266 n.9 (11th Cir. 2021) ("Because there was no direct copyright infringement, [Plaintiff's] contributory and vicarious copyright infringement claims fail.").[6]

### 2. False Advertising Claims

In its Complaint, Plaintiff alleges that Defendants' false statements regarding the originality of the Movie constitute false advertising under the Lanham Act. *See* Doc. 1-2, ¶¶ 168-171. Defendants argue that Plaintiff's claims for false advertising are "reverse passing off" claims that relate to false attribution of authorship and are therefore barred by *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003). *See* Doc. 12 at 19-21; Doc. 36 at 12-14.

Reverse passing off is when a "producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 n.1. As the Supreme Court explained in *Dastar*, the Lanham Act is not intended to protect originality or creativity, holding that the Act's "origin of goods" phrase "refers to the producer of . . . tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. *Dastar* further noted that to have the "origin of goods" phrase include the creator of a "communicative" product (*e.g.*, a book or movie) would cause the Lanham Act to conflict with copyright law,

---

[6] While not binding, the Court finds this authority to be persuasive.

because copyright law already addresses the copying of communicative products specifically. *See id.* at 32-33.

Here, Plaintiff's claims are foreclosed by *Dastar*. As Plaintiff describes them, the false advertising claims relate to the misrepresentation of the Movie's authorship, not production. *See* Doc. 28 at 18 ("The fundamental issue is that Defendant Netflix advertised the Movie as an 'original story that was conceived of and written by Defendants McKay and Sirota.'") (citing Complaint, ¶ 168); Doc. 49 at 13 (same). Because Plaintiff's claim for false advertising relates to the misrepresentation of authorship, rather than the nature, characteristics, or qualities of the Novels themselves, Plaintiff's claim is foreclosed by *Dastar*. *See Monilisa Collection, Inc. v. Clarke Products, Inc.*, 2011 WL 2893630, at *3 (M.D. Fla. July 20, 2011); *see also Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. 2009).

### 3. Preemption of Unjust Enrichment and FDUTPA Claims

Defendants argue that the Copyright Act preempts Plaintiff's state law claims for unjust enrichment and violation of FDUTPA. *See* Doc. 12 at 21-23; Doc. 36 at 14-16. In response, Plaintiff argues that its claims clearly contain the requisite "extra element" that renders them qualitatively different from its copyright claims and are thus not precluded. *See* Doc. 28 at 19-20; Doc. 49 at 13-15.

"Section 301 of the [Copyright] Act preempts all state causes of action based on a right found in the Act or an equivalent to such a right." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (quoting 17 U.S.C. § 301(a)). "Preemption occurs if the rights at issue (1) fall within the subject matter of the copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106." *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001) (citations and internal quotations omitted). However, a "state law claim is not preempted if the 'extra element' changes 'the nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Bateman*, 79 F.3d at 1549 (citations omitted) (emphasis in original).

Here, the Works at Issue unquestionably fall within the subject matter of the Copyright Act. *See* 17 U.S.C. § 102 (listing "literary works" and "motion pictures" as works of authorship in which copyright protection subsists). Plaintiff confirms as much by asserting its copyrights in connection with its FDUTPA claims. *See, e.g.*, Doc. 1-2, ¶ 204.

Plaintiff's unjust enrichment and FDUTPA claims do not contain the "extra element" that would make them qualitatively different from Plaintiff's copyright claims. These claims merely repeat and incorporate the prior allegations of the copyright infringement claims. *See, e.g.*, Doc. 1-2, ¶¶ 152-66, 202-31 (asserting claims by incorporating the foregoing paragraphs by reference). Plaintiff's mere recital of

the claims' elements is not enough to meet this test, (*see* Doc. 28 at 19-20; Doc. 49 at 13-15), and as such, these claims are preempted. *See Escal Inst. of Advanced Tech. v. Treadstone 71, LLC*, No. 2:23-cv-630-SPC-KCD, 2024 WL 4149864, at *3-*4 (M.D. Fla. Sept. 11, 2024) (holding that plaintiff's unjust enrichment and FDUTPA claims were preempted because their factual basis was not qualitatively different from plaintiff's copyright infringement claims); *see also Twombly*, 550 U.S. at 554-55.

In sum, Plaintiff has failed to state a plausible claim in the Complaint.[7]

---

[7] Given the Court's determination that Plaintiff has failed to state a plausible claim in the Complaint, the Court declines to address Creator Defendants' alternative theories of dismissal predicated upon lack of personal jurisdiction and improper venue. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808, 808 n.9 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action . . . . The same is also true where the plaintiff is relying on the theory of general personal jurisdiction."); *see also Honig v. Kornfeld*, 339 F. Supp. 1323, 1347 (S.D. Fla. 2018) (declining to address the issue of personal jurisdiction where plaintiffs had failed to state a valid claim against non-resident defendants).

### III. Conclusion

Accordingly, it is **ORDERED** that Defendants' Motions to Dismiss (Doc. 12; Doc. 36) are hereby **GRANTED**. Plaintiff's Complaint is **DISMISSED** with prejudice. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Orlando, Florida on August 19, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record